UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY SCHOOLS RISK MANAGEMENT JOINT POWERS AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY INSURANCE CORPORATION, an Illinois corporation, authorized to do business in California; WESCO INSURANCE COMPANY, a Delaware corporation authorized to do business in California, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 17-cv-252-GPC-KSC<br><br>**TENTATIVE ORDER**<br><br>**(1) DENYING WESCO'S MOTION FOR SUMMARY JUDGMENT AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART LIBERTY'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. Nos. 33 and 34] |

Presently before the Court are the following cross motions for summary judgment: (1) Defendant Liberty Insurance Corporation's ("Liberty")[1] Motion for Summary Judgment as to Plaintiff San Diego County Schools Risk Management Joint Powers Authority's ("JPA") first amended complaint and as to the cross-claims asserted by

---

[1] Liberty was erroneously sued as "Liberty Mutual Insurance Company."

1

1  defendant Wesco Insurance Company ("Wesco") (Dkt. No. 33) and (2) Wesco's Motion for Summary Judgment, or alternatively partial Summary Judgment (Dkt. No. 34). Defendants concurrently filed a Joint Statement of Undisputed Material Facts ("JSUMF") with these motions. Dkt. Nos. 33-3; Dkt. 34-2. Wesco and the JPA filed oppositions to Liberty's Motion on November 17, 2017. Dkt. Nos. 36-37. Liberty filed an opposition to Wesco's Motion on November 17, 2017. Dkt. No. 38. Liberty and Wesco filed replies on December 8, 2017. Dkt. Nos. 42, 44. On January 2, 2018, the Court granted Liberty's Ex Parte Motion to file a Sur-Reply, which Liberty filed on January 8, 2018. Dkt. Nos. 46, 49. A hearing as to these motions will be held on January 12, 2017. The parties will be given the opportunity to address the tentative ruling at the scheduled hearing.

Upon consideration of the moving papers, parties' oral arguments, and the applicable law, and for the following reasons, the Court provides this tentative decision (1) **DENYING** Wesco's Motion for Summary Judgment and (2) **GRANTING IN PART and DENYING IN PART** Liberty's Motion for Summary Judgment.

## I. Legal Standard

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof

at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits." *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted). Moreover, "when simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Id.* at 1134.

## II. Background

### a. The Joint Powers Authority ("JPA")

Plaintiff San Diego County Schools Risk Management Joint Powers Authority

("JPA") is an organization formed pursuant to California Government Code § 6500, *et seq.* whose members consist of various public educational agencies located in San Diego County. JSUMF ¶ 1. The JPA provides and administers a self-insurance program for workers' compensation claims involving its members. The JPA and its members are self-insured pursuant to California Labor Code § 3700(c). *Id.* ¶ 2.

The JPA purchased a policy titled "Excess Insurance Policy for Self-Insurer of Workers' Compensation and Employers' Liability from Liberty, policy number EW7-64N-436336-012, in effect from July 1, 2012 through July 1, 2013 (Exhibit A, the "Liberty Policy"). *Id.* ¶ 3. The JPA subsequently purchased an Excess Workers' Compensation and Employers Liability Insurance Policy from Wesco, policy number WPP110079300, in effect from July 1, 2013 to July 1, 2014. (Exhibit B, the "Wesco Policy"). *Id.* ¶ 4.

### b. The *Velazquez* Claim

In 2012, Francisco Velazquez was employed as a custodian at the San Ysidro School District ("SYSD"). *Id.* ¶ 6. Mr. Velazquez's job duties included repeated heavy lifting of bags of trash to be placed into a dumpster. *Id.* After Mr. Velasquez returned to work at SYSD on March 13, 2013 following an extended leave of absence for personal reasons, Mr. Velazquez suffered a cumulative trauma industrial injury where he complained of neck pain, left shoulder pain, left elbow pain, left wrist pain, and radiating left leg pain. *Id.* ¶ 6. On May 29, 2013, Mr. Velasquez saw his personal physician Dr. Johnson, who placed him on modified duty. *Id.* ¶ 7. After June 19, 2013, continued to work full time under work restrictions/modified work duty. *Id.* Mr. Velasquez's pain continued until he became permanently disabled due to his industrial cumulative trauma injury. The parties stipulate that the last day Mr. Velasquez was exposed to the work conditions which caused and/or aggravated his cumulative trauma injury was September 13, 2013. *Id.* ¶ 8. Mr. Velazquez applied for workers' compensation benefits as a result of his cumulative trauma injury, which the JPA reported to Liberty and Wesco. The JPA has incurred expenses on behalf of SYSD in an amount exceeding $100,000 for workers' compensation benefits paid on

Mr. Velasquez's claims. *Id.* ¶ 9.

### c. The *Smith* Claim

Alicia Smith commenced employment at the Escondido Union High School District prior to 1995. *Id.* ¶ 10. In 2008, she first experienced an industrial cumulative trauma injury from the repetitive motion requirements of her job (typing, lifting of heavy items in the warehouse, and prolonged sitting). She experienced muscle tightness in her right shoulder and arm that gradually increased over time. Ms. Smith worked in a full-duty capacity between 2008 and July 30, 2013, and wore a brace on her right wrist from 2009 to July 30, 2013 due to her typing duties. The parties have stipulated that the last day she was exposed to work conditions that caused or aggravated her was July 30, 2013. *Id.* ¶ 11. Ms. Smith applied for workers' compensation benefits as a result of her cumulative trauma industrial injury, which the JPA reported to Liberty and Wesco. *Id.* ¶ 12. The JPA has incurred expenses exceeding $100,000 for workers' compensation benefits paid on Ms. Smith's claim. *Id.*

### d. The Liberty Policy

The Liberty Policy was in effect from July 1, 2012 through July 1, 2013 and requires Liberty to indemnify (reimburse) the JPA for any workers' compensation claims in excess of the JPA's $100,000 self-insured retention. JUSF ¶ 3. The Liberty Policy provides in pertinent part:

**PART ONE – WORKERS COMPENSATION INSURANCE** . . .

C. This excess insurance applies to losses you have paid as a qualified self-insurer under the Workers Compensation Law for bodily injury by accident or bodily injury by disease including resulting death, provided:

   1. The bodily injury by accident occurs during the policy period or
   2. The bodily injury by disease is caused by, or aggravated by the conditions of employment by you. The employee's last day of exposure to those conditions causing or aggravating such bodily injury by disease must occur during the

policy period.

Ex. A at 37. Section N of the Liberty Policy—titled Policy Conforms to Law—states "If terms of this policy are in conflict with any law applicable to this policy, this statement amends this policy to conform to such law." Ex. A at 44.

### e. The Wesco Policy

The Wesco Policy states in pertinent part:

A. How This Insurance Applies

This Workers' Compensation Insurance applies to loss paid by you as required by the Workers' compensation law for bodily injury (including cumulative trauma) by accident or bodily injury (including cumulative trauma) by disease and including resulting death, provided:

1. The bodily injury (including cumulative trauma) by accident must occur during the policy period; and

2. The bodily injury (including cumulative trauma) by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury (including cumulative trauma) by disease must occur during the policy period.

Ex. B at 54.

### f. Cost Sharing Agreement

Wesco contends that a cost sharing agreement was reached with Liberty to share the "excess" costs calculated by "time on the risk" based on the number of days each carrier's policy was in effect during the period of the claimant's cumulative injury. Dkt. No. 36 at 9. Wesco contends that they agreed to a 59.5% (Liberty)—40.5% (Wesco) allocation as to the Velazquez claim and a 91.5% (Liberty)—8.5% (Wesco) allocation as to the Smith claim. Wesco claims that in May 2016 Liberty stopped making payments. Wesco further contends that documents from the period establish that Liberty agreed to share costs in

6

excess of JPA's retention. *See* Soskin Declaration Ex. 2.

### g. Claims at Issue

The JPA's first three causes of action seek a declaration that Wesco and Liberty are jointly liable for reimbursement of sums in excess of $100,000 for the Velasquez and Smith claims, and further seeks apportionment of any future similar claims that may involve the policy periods of both policies. The fourth and fifth causes of action seek declaratory relief that, if it is entitled to reimbursement, it must satisfy only a single $100,000 retention. In its sixth cause of action, the JPA seeks a declaration that Liberty breached its insurance contract by failing to pay reimbursement for losses when the claims were due.

Wesco's first cross-claim asserts that Liberty must pay the entirety of the Smith and Velazquez claims. Wesco's second cross-claim asserts that it is entitled to "time on the risk" allocation if it has any obligation to pay as to the Velazquez or Smith claims. Wesco's third cross-claim asserts that the two insurers allegedly reached an agreement to allocate expenses for the Smith and Velazquez claims. Fourth, Wesco seeks reimbursement for any sums paid, because it asserts that 100% of liability falls on Liberty.

Liberty seeks in its motion for summary judgment a declaration that:[2]

(1) By the terms of the insurance policy that Liberty issued to the JPA, no coverage is afforded for loss incurred by the JPA with respect to cumulative injury to employees, where the employees' last exposure to injurious workplace conditions occurred after the end of the Liberty policy period

(2) The terms of the Liberty policy are not nullified or superseded by operation of the California Labor Code

(3) Liberty did not enter into an actual or implied contract with Wesco to waive

---

[2] Certain claims, such as Liberty's Counterclaim against the JPA for Reimbursement (Dkt. No. 14), are not at issue in the instant motions for summary judgment.

7

the terms of the Liberty policy.

Dkt. No. 33 at 2.

Wesco seeks in its motion for summary judgment:

    (1) A declaration that California Labor Code Section 5500.5(a) applies as to the Velasquez and Smith claims and the Wesco and Liberty Policies at issue

    (2) A declaration that JPA's insurer(s) for the one year prior to the date Mr. Velasquez suffered disability are liable for Mr. Velasquez's claim

    (3) A declaration that JPA's insurer(s) for the one year prior to the date that Ms. Smith suffered disability are liable for Ms. Smith's claim

    (4) In the alternative, a declaration that the liability for the Velasquez and Smith claims shall be apportioned between Liberty and Wesco based on the number of days of the respective employee's cumulative injury. This would result in a 59.5% (Liberty)/40.5% (Wesco) apportionment for the Velasquez claim and a 91.5% (Liberty)/8.5% (Wesco) apportionment for the Smith claim

    (5) A legal ruling that the provision of the Liberty Policy, which requires the last date of exposure to conditions causing injury to occur during the period of the policy, conflicts with California Labor Code Section 5500.5 and should be amended to conform with Section 5500.5.

*See* Dkt. No. 34 at 3.

## III. Discussion

Liberty's primary argument is that its policy does not apply to the Velazquez and Smith claims because their respective "last exposure to injurious conditions" occurred after the expiration of the Liberty Policy. Dkt. No. 33-1 at 12. According to Liberty, the policy language—"The employee's last day of exposure to those conditions causing or aggravating such bodily injury by disease must occur *during the policy period*"—clearly and unambiguously means that Liberty has no obligation to reimburse the JPA.

Wesco contends that this policy language is inconsistent with Section 5500.5 of the

California Labor Code and thus must be amended to conform to California law. Accordingly, the Court will first determine whether Section 5500.5 applies and amends the Liberty Policy.

### a. Does Section 5500.5 apply to an excess insurance policy of a self-insurer?

Section 3700 of the California Labor Code establishes the employer's duty to "provide compensation security" for worker's compensation claims by either "(1) carrying insurance with an authorized company (subd. (a)) or (2) securing from the director a certificate of consent to self-insure which may be furnished upon satisfactory proof of ability to self-insure and pay compensation that may become due. (subd. (b))." *Self-Insurers' Security Fund v. ESIS*, 204 Cal. App. 3d 1148, 1156 (1988). Under Section 3700, every employer except the state must secure the payment of worker's compensation claims by "being insured against liability to pay compensation by one or more insurers duly authorized to write compensation insurance in this state" or "For any county, city, city and county municipal corporation, public district . . . including each member of a pooling arrangement under a joint exercise of powers agreement (but not the state itself), by securing from the Director of Industrial Relations a certificate of consent to self-insure against workers' compensation claims." Cal. Labor Code § 3700. Under the self-insurance program, the employer must demonstrate the financial ability to pay any compensation that may become due to its employees. Cal. Labor Code § 3700. Under California law, a self-insured employer may purchase a "special excess workers' compensation policy to discharge any or all of the employer's continuing obligations as a self-insurer to pay compensation or to secure the payment of compensation." Cal Labor Code § 3702.8, subd. (c).

California Labor Code Section 5500.5 states in pertinent part that "liability for occupational disease or cumulative injury claims filed or asserted on [January 1, 1981 and thereafter] shall be limited to those employers who employed the employee during a period of [one year] immediately preceding the date of injury, as determined pursuant to Section

9

5412, or the last date on which the employee was employed in an occupation exposing him or her to the hazards of the occupational disease or cumulative injury, whichever occurs first." In *General Accident Ins. Co. v. Workers' Comp. Appeals Bd.*, 47 Cal. App. 4th 1141 (1996), the court judicially interpreted the phrase "employer" as used in Section 5500.5 to include multiple insurers which have assumed an employer's obligation to pay workers' compensation benefits.

Wesco argues that Liberty and Wesco must be treated as "employers" for purposes of Section 5500.5. Specifically, Wesco points to the court's analysis in *General Accident* to argue that workers' compensation insurers are subrogated to the rights of the employer to recover losses (putting carriers in the same position as an employer). Dkt. No. 34-1 at 18. Further, Wesco asserts that Liberty's argument—that the Liberty Policy is not governed by Section 5500.5 because it only affords excess insurance to the self-insured JPA—is untenable because Liberty has never provided any authority for this position, and because numerous parts of the Liberty policy state that it applies to JPA's obligations under California's workers' compensation law. Dkt. No. 34-1 at 13.

Liberty argues that Section 5500.5 does not apply because it, as an excess insurer for a self-insurer, is not an "employer." Specifically, Liberty asserts that *General Accident* is inapposite because that case involved only primary insurers and not excess insurers. Dkt. No. 38 at 8. Liberty argues that unlike an excess insurer, a "primary compensation insurer" is "directly and primarily liable" for payment of compensation to an injured worker. *See id.* (citing *Subsequent Injuries Fund of Calif. v. Industrial Acc. Com.*, 49 Cal. 2d 354, 356 (1957)). Liberty asserts that excess insurers such as Liberty and Wesco provide only reimbursement of benefits the self-insured employer must pay directly. Accordingly, Liberty argues that an excess insurer does not assume the employer's obligation to pay benefits directly to claimants, but rather is more in the "nature of reinsurance" by allowing the self-insurer to protect itself against a portion of the risk it has agreed to insure. Dkt. No. 38 at 10.

10

The case law strongly favors a reading that Section 5500.5 does not apply as to excess insurers of a self-insurer. In *San Francisco Bay Area Rapid Transit District v. General Reinsurance Corporation*, 111 F. Supp. 3d 1055, 1059 (N.D. Cal. 2015), General Reinsurance issued an excess insurance policy to the San Francisco Bay Area Rapid Transit District ("BART"), which had elected to serve as a self-insurer for workers' compensation claims. In examining whether Section 5300 of the Labor Code applied, the Court held, in the context of examining a jurisdictional argument, that Division Four of the Labor Code (the workers' compensation statutory scheme, including Section 5300) is limited to disputes involving workers' compensation claims, including claims against workers' compensation policies. *Id.* at 1065. Further, the Court explicitly found that "[a]n excess insurance policy, however, is not a workers' compensation policy and thus not subject to Division Four." *See id.* (citing *Millman v. Contra Costa Cnty.*, W.C.A.B. No. ADJ1527953, 2013 Cal. Wrk. Comp. P.D. LEXIS 615 (Appeals Bd. noteworthy panel decision)).[3] Here, the statute at issue (Section 5500.5) is also within Division Four of the Labor Code. Like *BART*, which involved a self-insured public agency's excess policy, the instant case revolves around the JPA, a self-insurer, which has obtained excess insurance. Accordingly, the Court holds that like in *BART* and *Millman* Section 5500.5 does not apply to the instant claim because an excess policy is not a workers' compensation policy and thus cannot be subject to Division Four of the Labor Code. *See BART*, 111 F. Supp. 3d at 1059.

The Court's conclusion that Section 5500.5 does not apply to this case is also supported the different roles played by a primary/self-insurer and an excess insurer. As the self-insurer, the JPA is the party obligated to "place itself in the position of a private

---

[3] Decisions by the Workers Compensation Appeals Board designated as "significant panel decisions" are not binding precedent, but are persuasive in front of the WC Board. *BART*, 111 F. Supp. 3d at 1072 n. 4. In *Millman*, the Court held that the County's excess policy was "not a workers' compensation policy as defined by the Insurance Code and accordingly it [could not], by itself, provide workers' compensation insurance coverage." 2013 Cal. Wrk. Comp. P.D. LEXIS at *4.

11

insurer." *See Denny's Inc v. Workers' Comp. Appeals Bd.*, 104 Cal. App. 4th 1433, 1442 (2003). The excess insurer, on the other hand, does not pay *any* worker's compensation benefits but rather reimburses the JPA after the JPA has paid these benefits. Excess insurance under California law is optional and not required by any workers' compensation statutory scheme. Cal. Labor Code § 3702.8(c) (self-insured employers "may purchase" a special excess workers' compensation policy to discharge any or all of the employer's continuing obligations as a self-insurer to pay compensation or to secure the payment of compensation."). *See also Millman*, 2013 Cal. Wrk. Comp. P.D. LEXIS at *5-6 (noting that workers compensation policies are distinguished from excess policies because workers compensation policies must contain a clause that the "insurer will be directly and primarily liable to any proper claimant for payment of . . . compensation.").

Moreover, the cases cited by Wesco to demonstrate that Liberty's "last exposure" provision violated law and public policy as inconsistent with Section 5500.5 are inapposite and did not involve excess insurers of a self-insured entity. *See, e.g.*, Dkt. No. 44 at 11 n.2. Instead, Wesco merely relies on cases that describe the general public policy rationale of Section 5500.5 that allows an employee to recover for his entire cumulative injury from one or more employers of his choosing for whom he worked within the preceding five years, even though a portion of his injury was incurred in prior employments, and allows employers the right to seek contribution from other liable employers. *See Flesher v. Workers' Comp. Appeals Bd.*, 23 Cal. 3d 322, 325-26 (1979). These rationales do not justify the imposition of Section 5500.5 on an excess insurer's policy, particularly when no case has ever done so.

In its Reply, Wesco cited for the first time *General Reinsurance Corp., et. Al v. Workers' Compensation Appeals Board, et. Al.*, 65 Cal. Comp. Cases 1441, 2000 Cal. Wrk. Comp. LEXIS 7201 (2000), arguing that this case established that excess insurance issued to a self-insurer was subject to Workers' Compensation Law. There, the Court of Appeal found that the fact that an excess insurance was an indemnity policy, not a direct liability

12

policy, did not prevent the Court from requiring joinder because provisions of the excess policy indicated the excess insurer was clearly "interested" in the proceeding. *Id.* at \*1444. Liberty, in its Sur-Reply argues that *General Reinsurance* was a limited holding addressing only whether an excess insurer could be joined in a workers' compensation proceeding. The Court agrees that *General Reinsurance* stands only for the proposition that an excess insurer can be properly *joined* in a workers compensation case. *See BART*, 111 F. Supp. 3d 1055, 1067 (stating that the *General Reinsurance* joinder case stands only for the proposition that an "excess insurer may be a party to a workers' compensation proceeding.").

Accordingly, the Court concludes that Section 5500.5 does not apply to an excess insurer of a self-insured entity.

### b. No Reason Exists to Rewrite the Liberty Policy

Because the Court finds that Section 5500.5 does not apply, the Court will accordingly decline to rewrite the Liberty Policy to conform with the provisions of Section 5500.5. The Liberty Policy states that Liberty would be obligated to pay worker's compensation benefits beyond the JPA's $100,000 retention if:

1. The bodily injury by accident occurs during the policy period or
2. The bodily injury by disease is caused by, or aggravated by the conditions of employment by you. The employee's last day of exposure to those conditions causing or aggravating such bodily injury by disease must occur during the policy period.

Wesco's argument—relying on Section 5500.5—is that these provisions should be rewritten to account for a one year lookback period pursuant to Section 5500.5. *See* Cal Labor Code § 5500.5 (limiting liability to a period of one year immediately preceding the date of injury (as defined by Section 5412) or the last date on which the employee was employed in an occupation exposing him or her to the hazards of the occupational disease or cumulative injury, whichever occurs first).

13

The Court is particularly reluctant to rewrite the Liberty Policy when it appears that the policy language is standard policy language included in worker's compensation excess insurer policies across the country. *See BART*, 111 F. Supp. 3d 1055, 1060 (policy applied to losses paid for "bodily injury by disease" which was defined as "the bodily injury or disease is caused by the conditions of employment by the Insured. The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur *during the period* this policy is in force."); *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal. App. 4th 64, 78 (2009) (indemnity provision in excess insurer contract required "last day of exposure" to take place within the policy period). The Court observes that even the Wesco policy uses similar language and would need to be rewritten to conform with Section 5500.5 under Wesco's theory. *See* Ex. B. at 54 ("1. the bodily injury (including cumulative trauma) by accident must occur during the policy period . . . 2. the bodily injury (including cumulative trauma) by disease must be caused or aggravated by the conditions of your employment. The employee's *last day of last exposure* to the conditions causing or aggravating such bodily injury (including cumulative trauma) by disease must occur *during the policy period*.") (emphasis added). Given that no case has ever rewritten an insurance policy to conform with Section 5500.5(a), the Court declines to do so here.

### c. Liberty Policy

As the Court has determined that Section 5500.5 is irrelevant to an excess policy of a self-insurer, these provisions do not apply. Therefore, the remaining issue is whether or not the Smith and Velasquez claims fall within the language of the Liberty Policy as written. Wesco argues the express language of the Liberty policy imposes the "last exposure date" limitation only on bodily injury by disease claims and that the Smith and Velasquez claims do not constitute "diseases" because they are injuries caused accidentally by repetitive motions and the long term effects of lifting objects. Liberty argues that cumulative injury by disease under its policy encompasses "any and all work-related injury

14

or disease that results from long term 'exposure' to hazardous conditions." Dkt. No. 38 at 16.

Liberty has the better position. Cumulative injury can constitute "bodily injury by disease" in an excess insurer's policy. Indeed, such a possibility is explicitly accounted for in the Wesco policy. *See* Ex. B at 54. ("the bodily injury (including *cumulative trauma*) by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury (including *cumulative trauma*) by disease must occur during the policy period.") (emphasis added). Moreover, the Liberty policy explicitly defines an accident to be "each accident or occurrence or series of accidents of occurrences arising out of *any one event*" and that "the accident is deemed to end 72 hours after the event commences." Ex. A at 40. Accordingly, cumulative injury of the type suffered by Smith and Velasquez under the Liberty policy cannot constitute an "accident" and must necessarily be accounted for by the "bodily injury by disease" provision.

It is undisputed that the dates of Smith and Velasquez's last exposure to injurious conditions occurred after the Liberty Policy expired on July 1, 2013. JSUMF ¶ 8. Therefore, these claims fall outside the scope of the Liberty Policy. Based on the terms of the Wesco Policy, the Court concludes that Wesco is responsible for 100% of any workers compensation benefits paid as to the Smith and Velasquez claims paid in excess of the JPA's retention.[4] *See* Ex. B at 54 (providing excess insurance coverage for amounts in excess of the JPA's retention because the "employee's last day of last exposure to the conditions causing or aggravating such bodily injury (including cumulative trauma) by disease" occurred during the policy period). Based on the foregoing, the Court will tentatively **GRANT** Liberty's Motion for Summary Judgment as to the First, Second,

---

[4] This ruling applies only as to Wesco's duty to reimburse under the terms of the Wesco Policy. Wesco may be entitled to apportionment if it is able to succeed on its breach of contract claim against Liberty.

15

Third, and Sixth Causes of Action in the JPA's First Amended Complaint and as to Wesco's First, Second, and Fourth Cross-Claims.

### d. Number of Retention's – JPA's Fourth and Fifth Causes of Action

Plaintiff's Fourth and Fifth Causes of Action in the First Amended Complaint seek a judicial declaration that the JPA is "only required to satisfy one retention" and that Liberty is obligated to reimburse the JPA for all unreimbursed expenses incurred in excess of the $100,000 retention as to the Velazquez and Smith claims Liberty argues that it is "entitled to summary judgment as to all causes of action within the first amended complaint." Dkt. No. 33-1. The parties have not sufficiently briefed the number of retentions required to trigger liability. Nonetheless, the Court tentatively finds that these causes of action are **MOOT** because Liberty has no obligation to pay for unreimbursed expenses incurred in excess of the $100,000 retention for the Velasquez and Smith claims.

### e. Breach of Contract Claim – Wesco's Third Cross-Claim

Liberty also moves for summary judgment as to Wesco's Third Cross-Claim for breach of contract. Wesco has asserted that notwithstanding the terms of the Liberty Policy, Liberty and Wesco entered into an agreement to share the reimbursement of JPA's expenses for the Velazquez and Smith claims in excess of JPA's retention. Dkt. No. 34 at 21-24. Under that agreement, the parties purportedly agreed to the following allocation of claims in excess of JPA's retention: 59.5% (Liberty)/40.5% (Wesco) allocation for the Velasquez claim and a 91.5% (Liberty)/8.5% (Wesco) allocation for the Smith claim. Wesco alleges that Liberty has breached this agreement.

Liberty asserts that Wesco has not provided evidence of such a contract and that Wesco did not identify any documents or witnesses relevant to such an agreement in its Rule 26 disclosures. Dkt. No. 33-4, Topp Decl., Ex. A. Wesco asserts that its counsel Stephen Soskin made an unintentional oversight by failing to identify witnesses and documents related to the breach of contract claim and has since served a "First Supplement" of initial disclosures identifying witnesses and documents that Wesco

16

believes establish the existence of a contract between Wesco and Liberty to share the costs of the Velazquez and Smith claims on their relative "time on the risk." Dkt. No. 36 at 28. In these disclosures, Wesco has included a claims summary regarding the Velasquez claim which shows that "Authority was received from Liberty Mutual for 59.5% of the settlement or $26,775.00." Dkt. No. 36-2, Ex. 2 at 14. Further, Wesco has included an email related to the Smith Claim from the JPA's claims administrator (Athens Administrators) to Liberty's Rebecca Bearman, with Wesco CC'ed, stating that she "received everyone's approval" for an allocation related to the Liberty claim. Dkt. No. 36-3, Ex. 3 at 16.

Liberty has not shown an absence of a genuine dispute of material fact as to the existence of a valid and enforceable contract between Liberty and Wesco. Liberty has not provided an evidentiary basis upon which the Court can conclude that no contract exists. Meanwhile, Wesco has provided evidence suggesting conduct indicating that a contractual agreement between Liberty and Wesco may have been reached. Accordingly, at this juncture the Court will tentatively **DENY** Liberty's Motion for Summary Judgment on this basis without prejudice to its reassertion at a later stage, as discovery appears ongoing as to this issue.

## CONCLUSION AND ORDER

Based on the reasoning above, the Court will tentatively **DENY** Wesco's Motion for Summary Judgment in its entirety and will tentatively **GRANT IN PART** and **DENY IN PART** Liberty's Motion for Summary Judgment. Accordingly, what remains in this case is: (1) Wesco's Third Cross-Claim for Breach of Contract and (2) Liberty's Counterclaim for Reimbursement from the JPA. Counsel are advised that the Court's rulings are tentative, and the Court will entertain additional argument at the hearing on January 12, 2018.

Based on the foregoing, the Court tentatively **DECLARES** that:

1. By the terms of the insurance policy Liberty issued to the JPA, no coverage is afforded for loss incurred by the JPA with respect to cumulative injury to employees, where the employees' last exposure to injurious workplace conditions occurred after the end of the Liberty policy period.
2. The terms of the Liberty Policy are not nullified or superceded by operation of Section 5500.5 of the California Labor Code. California Labor Code 5500.5(a) does not apply to the Velasquez and Smith claims or any future claims based on the Liberty Policy.
3. Because the Liberty Policy does not apply as to the Smith and Velasquez claims, under the Wesco Policy, Wesco is responsible for 100% of any workers compensation benefits paid as to the Smith and Velasquez claims paid in excess of the JPA's retention.

**IT IS SO ORDERED**.

Dated: January 11, 2018

Hon. Gonzalo P. Curiel
United States District Judge